IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**SHERRY A. TULK,**

    **Plaintiff,**

**v.**                                                             **Case No. 2:17-cv-00685**

**THE DEMOCRATIC NATIONAL PARTY,** *et al.***,**

    **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The plaintiff filed an Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1), which has been granted by separate Order, and a Complaint (ECF No. 2), followed by an Amended Complaint (ECF No. 8), alleging copyright infringement by over 280 defendants. The matter is before the undersigned for initial screening pursuant to 28 U.S.C. § 1915(e)(2)(B). Thus, service of process has not yet occurred.

**I.   STANDARD OF REVIEW**

Where, as here, a plaintiff is proceeding *in forma pauperis*, this court has a duty to "screen initial filings . . . to independently assess the merits of *in forma pauperis* complaints" and "exclude suits that have no arguable basis in law or fact." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)); *see* 28 U.S.C. § 1915(e). The court must "dismiss a complaint

filed *in forma pauperis* 'at any time if [it] determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" *Eriline Co.*, 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)). That section also provides for dismissal where the complaint seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

A frivolous case has been defined as one which is based on an indisputably meritless legal theory. *Denton v. Hernandez*, 504 U.S. 25 (1992). A frivolous claim lacks "an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

When reviewing an *in forma pauperis* complaint for failure to state a claim, this Court applies the same standards that it applies to review a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citing *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003)). The court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Id.* (internal quotation marks omitted); *see also Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that

2

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## II. THE PLAINTIFF'S ALLEGATIONS

Sherry A. Tulk (hereinafter "Tulk") filed her initial Complaint in this matter on January 20, 2017. The 85-page Complaint is extremely convoluted. It names and repeats certain defendants in the style of the case, but then names additional proposed defendants in the body of the Complaint. In total, the undersigned has been able to discern at least

3

280 individuals or entities that Tulk appears to be naming as defendants. A large majority of the proposed defendants are located outside the Southern District of West Virginia, and, thus, it appears that this court lacks personal jurisdiction over those defendants.

Nonetheless, even to the extent that Tulk has named individuals and entities located within the Southern District of West Virginia, the Complaint generally alleges that such individuals and entities have stolen her "business concepts" and are using words and slogans that she has used in her own "professional strategies and concepts." (ECF No. 2 at 4). Thus, Tulk claims, in a wholly conclusory manner, that these individuals and entities have engaged in "intellectual property theft and fraud." (*Id.*) She contends as follows:

> This brief story is a summary of that intellectual property (IP) theft and fraud which began in Ohio, and continues to the present, here in West Virginia . . . . It was not long before I began reading of my business concepts in the local newspapers, after pursing assistance with my startups from various local nonprofits. This expanded to include other concepts developed prior to moving here, and to aspects of my character, life commitments, values, keywords and phrases, i.e., my identity. The professional strategies and concepts I refer to are from various periods of time, some of the result of my own private research and pursuits, some academic (bachelor and master level) projects, some listed on my resume, some not. Finally, I initiated my first legal action for infringement July 2015 and am pursuing additional legal recourse for infringement and many Cease and Desists. This has become an apparent on-going, intentioned fraud of intellectual property and identity theft, ensuing life and employment hindrance, and it appears with intent to undermine pursuit of protection and legal recourse, by ensuring a survival focus.
>
> Also worthy of note, is that I began reviewing, researching, and acquainting myself with local and state organizations, government, community agencies, and areas of focus. Although farming, agriculture, energy, oil and gas production, manufacturing, technology and water protection were evident in WV, there were not major, state-wide areas of focus. Also, much of the perspectives were typically outdated and stale, coal focused, with limited areas of innovation focus. Primary areas of strength and viability were an arts movement, and isolated pockets of chemical and

technology. This began to change as more relevant programming, projects, and views began to emerge. It became apparent the majority was based on, or incorporating my work, research, projects, and my comprehensive or portions of my developed strategies, none of which were prevalent here until a few months after my arrival. Further, over time it became apparent out of state investment had increased with a GOP led crusade for power behind much of the revitalization.

(ECF No. 2 at 4-5).

The Complaint also contains delusional allegations that Tulk's personal technological devices have been repeatedly accessed and sabotaged, and that she has been stalked and harassed. (*Id.* at 5, 76). Specifically, Tulk contends as follows:

> The following is an example of situations which have repeated themselves in various scenarios (this occurred in my apartment in Charleston, WV, late Fall 2015): I woke up one morning to find a penny laying on the floor next to my air mattress. This prompted me to check my tablet to see if I had inadvertently dropped one of the pennies I keep with it, somehow missing it on the floor the night before. Both pennies were still in the case with my tablet. I then discovered one of my sd cards out of its hiding place. When I checked it for recent documents, my business board presentation, and this summary, both files were there, but both were blank. This is similar to many experiences since 2009.

(*Id.* at 5). The Complaint further alleges:

> Since relocating to Charleston, WV in summer 2014, I quickly saw the same pattern of implementing my intellectual property begin, (as well as stalking and harassment), and accelerate. This has occurred at all levels of government and community organizations. While my profession of choice is in part motivated by the desire to make a difference, I in no way wish for this to be at my expense, yet that is exactly what is happening. This pattern which began in Ohio, unfortunately continued here in WV after relocation. I have absolutely no intention to allow this to continue without taking recourse to remedy.
>
> Shortly after arrival, my experiences here reflected that the move did not halt the pattern. I then pursued assistance from various levels of law enforcement to no avail. The pattern eventually became an avalanche of every project, research and creation I have ever conducted, been a part of, developed and/or created, being implemented across the state, nation and some globally. It became apparent a complete access of all of my files had

> occurred. Additionally, projects I had proposed in my prior city of residence when this hellific situation began, we're [sic] also begun here. The following is a list of projects specific to the State of WV. This list includes introduced legislation based on my IP.

(*Id.* at 76). The Complaint then lists 16 items that Tulk contends are projects or programs that have implemented concepts and strategies similar to her work. (*Id.* at 76-77). The remainder of the Complaint lists hundreds of local, state, national, and global entities and individuals (ranging from local, state, and federal elected officials and political candidates from around the country, to local, state, and federal government agencies and associations, to online merchants, insurance companies and social media sites and their Chief Executive Officers). With respect to each of these entities or individuals, Tulk contends that they are using similar keywords, slogans or phrases, or have developed programs that use business, marketing, and community planning strategies or concepts similar to her own.

On January 4, 2019, Tulk filed an Amended Complaint (ECF No. 8), which is equally convoluted. Although the Amended Complaint purports to "resolve the jurisdiction issue" by separating her allegations based upon when she relocated to West Virginia on or about August 29, 2014, it continues to name defendants located outside the Southern District of West Virginia over which this court appears to lack personal jurisdiction. Tulk continues to complain about alleged infringement of her business and community marketing and economic development strategies and concepts. In pertinent part, the Amended Complaint states:

> And, in fact, after Ms. Tulk's establishment and protection of her solely developed marketing strategy, [a]ll of her writings became target of taking for marketing, branding, rebranding, new business, existing business, all level of government, and other entity use. Use market was and is not limited

>   to local and West Virginia entities. As Ms. Tulk continues to discover, the previously stated use of by nonprofit, governments and all-size businesses and corporations is extensive nationally and globally. Following this document, is an extensive, although not exhaustive, list of those using. [See pages 8-9].
>
>   In addition to all of the above is the inclusion of continuing hounding for more and attempts to destroy evidence of Ms. Tulk's ownership. Acts have included repeated hacking and/or accessing without permission, of electronic devices and storage devices. This also includes sending individuals to befriend, and/or get Ms. Tulk talking on a subject, as an attempt to extort, fraud extract her response, if any . . . . Through these ongoing situations and that Ms. Tulk was forced into fighting for her Civil Right to benefit from her own unique talent, skill and earned education, each election cycle since 2005 has included multiple candidates using her fight and other phrases, keywords, slogans and works of writing and developed strategies for campaign agenda and material, in addition to the stated branding/rebranding and marketing material, and her work of profession: City Planning, Community Development, Economic Development, Neighborhood Development, and other strategies; such as her City Health Initiative, System and Entity Process and Procedure Methodology and Process Improvement (And Auditing for), Transportation Initiative, Workforce Development and other ensuing Apprenticeship Programming, Education as a field of service and a local and national system, and developed business strategies.

(ECF No. 8 at 3-4). Tulk continues to allege that her personal technological devices have been hacked or sabotaged, that her apartment has been repeatedly broken into and her vehicle tampered with, that her flash drives have been stolen, and that she has been "followed around town and hounded as she moved about the city . . . ." (*Id.* at 4-6). She alleges that "[t]his same scenario continues to repeat itself to present, through multiple cities, and without another move, a third state." (*Id.* at 6).

### III. DISCUSSION

To state a copyright infringement claim sufficient to comply with Rules 8(a)(2) and 12(b)(6), "a plaintiff must generally allege (1) which specific original works are the subject of the claim, (2) that the plaintiff owns the copyright, (3) that the works have been

7

registered in compliance with copyright laws, and (4) by what acts and during what time the defendant has infringed the copyright." *Miracorp, Inc. v. Big Rig Down, LLC*, No. 08-2673-KHV, 2009 WL 10688833, *2 (D. Kan. Oct. 15, 2009). To prove that a defendant copied a protected work, a plaintiff must demonstrate that "the alleged infringer had access to the plaintiff's copyrighted work" and "that the works are substantially similar in their protected elements." *See Teller v. Dogge*, 8 F. Supp.3d 1228, 1234 (D. Nev. 2014) (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)).

> Section 102 of Title 17 of the United States Code provides:
>
> (a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:
>
>> (1) literary works;
>> (2) musical works, including any accompanying words;
>> (3) dramatic works, including any accompanying music;
>> (4) pantomimes and choreographic works;
>> (5) pictorial, graphic, and sculptural works;
>> (6) motion pictures and other audiovisual works;
>> (7) sound recordings; and
>> (8) architectural works.
>
> (b) <u>In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work</u>.

17 U.S.C. § 102 (emphasis added). Thus, federal copyright protection extends only to those components of a work that are original to the author. *See Apps v. Universal Music Group, Inc.*, 283 F. Supp.3d 946, 951 (D. Nev. 2017); *Jacobson v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002) (a plaintiff must demonstrate "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original.").

8

Moreover, copyright protection is expressly prohibited for ideas, procedures, concepts, methods of operation, principles, and discoveries, notwithstanding their form. 17 U.S.C. § 102(b); *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 836 (10th Cir. 1993) ("One of the fundamental tenets of copyright law is that protection extends only to the author's original expression and not the ideas embodied in that expression."); *Jacobsen*, 287 F.3d at 942 (quoting *Harper & Row, Publishers, Inc. v. Nation Enters*, 471 U.S. 539, 547 (1985) ("It is well settled 'no author may copyright facts or ideas.'"). Accordingly, "[a] central tenet of copyright law is that only a copyright owner's particular expression of his or her idea is protected, not the idea itself." *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp.2d 429, 440 (S.D.N.Y. 2011), *aff'd sub nom. Muller v. Anderson*, 501 F. App'x 81 (2d Cir. 2012) (citing 17 U.S.C. § 102(b)); *see also Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992) ("What is protected is the original or unique way that an author expresses . . . ideas, concepts, principles, or processes.") Thus, in examining the copyrighted and allegedly infringing works, a court must determine "'whether the similarities shared by the works are something more than mere generalized idea[s] or themes.'" *Muller*, 794 F. Supp.2d at 440 (other citations omitted).

Tulk's Complaint and Amended Complaint repeatedly assert that the defendants are using her marketing **strategies** and **processes**. Tulk is also claiming infringement by the defendants for the use of similar words, phrases, or slogans which are not subject to copyright protection under the circumstances. *See, e.g. Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 544 (2d Cir. 1959) (citing 37 C.F.R. § 202.1(a)) (words and short phrases, such as names, titles, and slogans, are not copyrightable even where distinctively used); *see also Acuff-Rose Music, Inc. v. Jostens*, 155 F.3d 140, 144 (2d Cir.

1998) (phrases that "enjoy[] a robust existence in the public domain" are not protectable); *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989) ("Ordinary phrases are not entitled to copyright protection."); *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 710 (7th Cir. 1972) ("The plaintiff could not complain about the use of the same words, as these are purely textual . . . ."); *Peters v. West*, 776 F. Supp.2d 742, 749 (N.D. Ill. 2011) (well-known phrase does not satisfy originality standard and is not protectable); *Prunte v. Universal Music Group, Inc.*, 699 F. Supp.2d 15, 23 (D.D.C. 2010) ("Like *scenes a faire*, individual words and short phrases are generally not protected because they lack the requisite originality."); *Whitehead v. Paramount Pictures Corp.*, 53 F. Supp.2d 38, 47 n.5 (D.D.C. 1999) ("[T]he isolated use of a word or phrase such as 'kind of cute' is not copyrightable.")

      Nowhere in the Amended Complaint does Tulk identify any specific original written work that has been copied by the defendants. Rather, she merely asserts that the defendants are using similar **concepts**, which are not protectable. The Complaint documents are deficient because they do not allege any specific original work which was allegedly infringed or specific infringing acts by any particular defendants and, thus they fail to satisfy the *Iqbal* plausibility standard.

      Moreover, Tulk's allegations are fanciful and delusional and precisely the type of allegations for which dismissal for frivolity under section 1915(e)(2)(B)(i) was designed. "Federal courts routinely dismiss allegations regarding broad-based conspiracies of computer hacking, surveillance, tracking, and the like, as factually frivolous under § 1915 where these allegations are fanciful, fantastic, delusional, irrational, or wholly incredible." *Nduka v. Williams*, No. 19-cv-4316, 2019 WL 5293649, *2 (E.D. Pa. Oct. 17, 2019) (citing

supporting cases). For example, courts have found to be legally frivolous allegations that the FCC, FBI, and the NSA had wiretapped the plaintiff's home, including her cell phone and home phone, hacked her computer and tablet, installed cameras in her home, tampered with her mail, and disclosed information obtained from these efforts to third parties, *see Barnes-Velez v. Fed. Commc'n Comm'n*, 18-cv-634, 2018 WL 4178196, at *1-3 (M.D. Fla. May 8, 2018), *report and recommendation adopted,* 2018 WL 4153937 (M.D. Fla. Aug. 30, 2018), and claims against two technology companies, federal judges and other court employees, and lawyers who allegedly "conspired with the other defendants to hack into her home computer and certain public library computers" to steal files.

Here, Tulk's allegations are, at best, general, conclusory, and speculative. Moreover, they are fanciful, fantastic, and delusional claims that merit dismissal. This is one of three civil actions filed by Tulk in this court alleging infringement of nothing more than general marketing and business concepts that do not warrant copyright protection. Each case has grown more irrational and implausible and this litigation represents an abuse of the judicial process and valuable court resources.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DIMISS** this civil action, pursuant to 28 U.S.C. § 1915(e)(2)(B), as frivolous and for failure to state a claim upon which relief can be granted.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of Title 28, United States

Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have **fourteen (14) days** from the date of filing of this Proposed Findings and Recommendation within which to **electronically file** with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

January 14, 2020

Dwane L. Tinsley
United States Magistrate Judge